UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN B.[1],                         Case No. 2:22-cv-2552
    Plaintiff,                     Litkovitz, M.J.

    vs.

COMMISSIONER OF                  **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Kevin B. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 12).

**I. Procedural Background**

Plaintiff filed his application for DIB in September 2019 alleging disability beginning March 12, 2019, due to spinal stenosis, cervical neck pain, dizzy/staring spells, fogginess, and migraine headaches accompanied by the inability to concentrate. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Jeffrey Hartranft. Plaintiff and a vocational expert ("VE") appeared telephonically and testified at the ALJ hearing on March 16, 2021. (Tr. 66-96). On March 25, 2021, the ALJ issued a decision denying plaintiff's DIB

---

[1] Pursuant to General Order 22-01 due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

application. (Tr. 50-65). This decision became the final decision of the Commissioner when the Appeals Council denied review on April 20, 2022.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

2

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since March 12, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: cervical degenerative disc disease with fusion; chronic frontal sinusitis; and headaches (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. He can frequently balance. Additionally, the [plaintiff] must avoid workplace hazards such as unprotected heights and machinery. He must also avoid commercial driving. Moreover, the [plaintiff] would be capable of performing simple, routine and repetitive tasks.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]
>
> 7. The [plaintiff] was born [in] . . . 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff]

---

[2] Plaintiff's past relevant work was a steel fabrication supervisor and glass machine operator, both skilled, medium exertion positions; an injector assembler, a skilled, light exertion position performed at a medium exertion level; and manufacturing supervisor, a semi-skilled, medium exertion position. (Tr. 59, 92).

3

subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, at any time from March 12, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 55-60).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as garment sorter (120,000 jobs nationally), packager (180,000 jobs nationally), and laundry worker (100,000 jobs nationally). (Tr. 60, 93-94).

2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D.  Specific Errors

On appeal, plaintiff alleges the ALJ erred by failing to (1) properly analyze his headache impairment at step three of the sequential evaluation process, (2) follow the requisite procedure for evaluating the veracity of plaintiff's subjective allegations in accordance with SSR 16-3p, and (3) properly evaluate his headache disorder and include accommodations in the residual functional capacity ("RFC") to account for this severe impairment.  (Doc. 9).  In response, the Commissioner argues the ALJ's decision is supported by substantial evidence.  (Doc. 11).  The Commissioner contends the ALJ's step three finding is supported by substantial evidence, and the ALJ properly evaluated plaintiff's subjective allegations and the medical evidence of record in formulating the RFC.  (*Id*.).

### 1. The ALJ's step three evaluation of plaintiff's severe impairment of headaches under Listing 11.02 is not supported by substantial evidence (first assignment of error).

In the first assignment of error, plaintiff alleges the ALJ erred at step three of the sequential evaluation process by finding plaintiff's "severe headache disorder does not medically equal Listing 11.02B."  (Doc. 9 at PAGEID 600).  Plaintiff argues that "[w]hile there is no specific listing dedicated to headache disorders, a claimant may nevertheless medically equal

5

listing 11.02, which typically assesses the condition of epilepsy." (*Id*., citing Soc. Sec. Ruling 19-4p). Plaintiff contends the medical evidence of record satisfies Sections B of Listing 11.02 because the "frequency and duration of Plaintiff's headaches far exceed the requirements of Listing 11.02B" as the medical record shows plaintiff has "constant, unrelenting headaches that occur twenty-four hours a day on a daily basis." (*Id*. at PAGEID 602, citing Tr. 290-91, 232-34, 304, 372, 406). Plaintiff further argues the ALJ erred in analyzing plaintiff's headaches under Section D of Listing 11.02 because the ALJ failed to explain "how he determined that Plaintiff does not have a marked limitation in any of the four categories of mental functioning." (*Id*. at PAGEID 601, citing Tr. 56).

The Commissioner argues the ALJ's step three finding pertaining to Listing 11.02 is supported by substantial evidence. (Doc. 11). The Commissioner contends that plaintiff fails to "state how the evidence demonstrates his headaches equaled the exacting standards of listing 11.02." (*Id*. at PAGEID 616).

### a. Step three of the sequential evaluation process

At step three of the sequential evaluation process, plaintiff carries the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653 (citing 20 C.F.R. § 404.1525(c)(3)) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must

"actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any step-three evaluation of the claimant's physical impairments where the ALJ found that the claimant had the severe impairment of back pain, and the claimant had put forth evidence that could meet the applicable Listing).

Where an ALJ does not discuss a Listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, "[a] claimant must do more than point to evidence on which the ALJ could have based" his Listing finding. *Id.* at 432 (quoting *Sheeks*, 544 F. App'x at 641-42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359,

7

366 (6th Cir. 2014) (finding harmless error in the ALJ's unexplained step-three findings where the claimant did not show that he could reasonably meet or equal a Listing's criteria).

SSR 19-4p indicates that primary headache disorder is not a listed impairment but directs consideration of Listing 11.02:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.

SSR 19-4p, 2019 WL 4169635, at *7. In pertinent part, this Listing describes:

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C). . . .
>
> . . . .
>
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
> 1. Physical functioning (see 11.00G3a); or
>
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
> 3. Interacting with others (see 11.00G3b(ii)); or
>
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, App.1, § 11.02.

### b. The ALJ's step three finding

In finding that plaintiff's headaches did not meet Listing 11.02 at step three of the sequential evaluation process, the ALJ found as follows:

> The claimant also does not meet or equal the epilepsy listing, 11.02. The claimant [] has moderate difficulties with understanding, remembering or applying

information. He has mild restrictions with interacting with others, concentration, persistence or pace, and adapting or managing himself. Although the claimant does not meet or equal the listing these limitations were taken into consideration in reducing the claimant to simple, routine, and repetitive tasks.

(Tr. 56).

### c. Analysis

The Court concludes that the ALJ's step three finding pertaining to plaintiff's headaches under Listing 11.02 is not supported by substantial evidence.

In finding plaintiff's severe headache impairment did not meet or equal Listing 11.02, the ALJ relied solely on the factors set forth in the second part of Listing 11.02D. The ALJ determined that plaintiff had "moderate difficulties with understanding, remembering or applying information . . . [and] mild restrictions with interacting with others, concentration, persistence or pace, and adapting or managing himself." (Tr. 56). The Court is unable to discern from the ALJ's decision how he reached the conclusion that plaintiff has "moderate" and "mild" limitations of functioning as opposed to the marked limitations required under Listing 11.02D. The ALJ's step three finding included no analysis or citation to the medical evidence of record in support of these conclusions. Nor do other portions of the ALJ's decision discuss the medical evidence upon which the ALJ based his "moderate" and "mild" findings. Without this explanation, the Court is unable to engage in meaningful judicial review. *Reynolds*, 424 F. App'x at 416.

The ALJ also failed to discuss the frequency and duration factors in Listing 11.02B and D. Listing 11.02B requires evidence showing headache occurrence of "at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)," and Listing 11.02D requires that headaches occur "at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see

9

11.00C)." 20 C.F.R. Part 404, Subpart P, App. 1, § 11.02. Significantly, Listing 11.02B contains no requirement for a marked limitation in any area of functioning. Instead, Listing 11.02B contains frequency and duration requirements only without requiring any specified limitation of function. *Id*. The evidence of record strongly suggests that plaintiff medically equals the frequency and duration requirements of Listing 11.02B.

As the ALJ acknowledged, plaintiff was seen by neurology in March 2019 for complaints of daily headaches, dizziness, light-headedness, and feeling faint. (Tr. 57, citing Tr. 284-85). Plaintiff reported his head pain was unbearable and triggered by light or temperature. (*Id*.). He also reported feeling "spaced" most of the time. (*Id*.). The neurologist assessed confusion and poor concentration "which can be epileptic or migraine" going on for five years. (Tr. 285). June 2019 treatment notes report "occipital like headaches" with increased pain on turning of the head and overhead activities. (Tr. 297). Medical records from July 2019 showed plaintiff complained of constant migraine headaches "24/7," with tunnel vision, continued lightheadedness, weakness, and spasms. (Tr. 291). He continued to "feel[] spacy" and had trouble concentrating. (Tr. 291). In January 2020, plaintiff continued to complain of pain originating in his neck and causing headaches bilaterally, with symptoms starting five years ago. He reported a significant workup for headaches to include an MRI, EEG, and CT scan, as well as physical therapy and injections. (Tr. 304). The orthopedist reported that plaintiff had failed conservative treatments and recommended surgery. (Tr. 307). Plaintiff underwent a neck fusion surgery in June 2020. (Tr. 445-486). In a follow up visit with his surgeon in September 2020, plaintiff "reported 'vast improvement' in his neck pain and headaches following a cervical fusion." (Tr. 58, citing Tr. 412). Nevertheless, his physician referred plaintiff to an ENT

10

physician for frontal "headaches, hx [history] sinus surgery x 2 with continue[d] pain." (Tr. 414).

In October 2020, plaintiff presented to Dr. Bradley Otto for complaints of "frontal headache[s] with radiation down to his face bilaterally which ha[d] been associated with a feeling of pre-syncope." (Tr. 406). Dr. Otto stated plaintiff had a "constant headache from his frontal region bilaterally which radiate[d] down to his face. Nothing makes this better." (*Id.*). Dr. Otto also stated plaintiff had tried medication but still had "tenderness to palpation over his frontal sinuses." (*Id.*). A CT scan was ordered, which showed mild edema in the bilateral sinuses and obstruction in the left. (Tr. 402). On January 7, 2021, plaintiff underwent a bilateral nasal endoscopy with debridement of the sinonasal cavity due to chronic sinusitis symptoms. (Tr. 375-76, 378-79). Following the surgery, in February 2021, plaintiff continued to report "near daily and constant" headaches that plaintiff alleged "began two years ago." (Tr. 372). Plaintiff described the headaches as "band like without nausea, photophobia, or phonophobia." (*Id.*).

These records raise a substantial question as to plaintiff's ability to satisfy the frequency and duration requirements of Listing 11.02B, and they strongly suggest plaintiff's severe headache impairment may equal Listing 11.02B. The ALJ's failure to address the frequency and duration factors in Listing 11.02B and D prevents meaningful judicial review. *See Nagy v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-00368, 2023 WL 2404061, at *9 (N.D. Ohio Mar. 8, 2023) (remanding for proper evaluation of the plaintiff's chronic daily headaches under listing 11.02); *Sharyta F. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00192, 2022 WL 4545251, at *9 (S.D. Ohio Sept. 29, 2022) (ALJ's failure to conduct required analysis under SSR 19-4p required remand). This assignment of error is therefore sustained. On remand, the ALJ must reevaluate

plaintiff's severe headache impairment at step three of the sequential evaluation process and provide a full discussion of Listing 11.02B and D equivalency.

### 2. The ALJ's RFC is not supported by substantial evidence (third assignment of error).

The RFC assessment is an evaluation of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is well-established that the ALJ determines a claimant's RFC. *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record"). *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006). The ALJ's RFC determination must be supported by substantial evidence. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020).

Here, the ALJ's RFC limited plaintiff, in pertinent part, to "perform light work as defined in 20 CFR 1567(b) except the claimant . . . would be capable of performing simple, routine and repetitive tasks." (Tr. 56). The ALJ concluded that the "overall evidence [] supports a reduction to simple, routine, tasks given his subjective complaints of problems with brain fog, concentration, and memory." (Tr. 58).

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because the RFC fails to take into account the restrictions and limitations imposed by his headache impairment. (Doc. 9 at PAGEID 606-10). Plaintiff argues the ALJ failed to provide a logical explanation and evidentiary basis for the RFC finding limiting plaintiff to performing simple, routine, and repetitive tasks because the ALJ failed "to explain how he arrived at the conclusion that such a restriction sufficiently addresses Plaintiff's limitations." (*Id*. at PAGEID 607, citing Tr. 56, 58). Plaintiff contends there is ample evidence in the medical record documenting "difficulty concentrating and focusing" (*Id*. at PAGEID 608, citing Tr. 79, 83-85, 224-26, 284-85, 291,

402), and the ALJ failed to explain why plaintiff "was nevertheless assessed to have no more than mild difficulty with concentration, why his allegations of brain fog were dismissed, or why these symptoms were determined to have absolutely no impact on his residual functional capacity for work." (*Id*.).

The Commissioner argues the ALJ's RFC is supported by substantial evidence of record. (Doc. 11 at PAGEID 627-29). The Commissioner cites to documented improvement of plaintiff's symptoms with treatment, as well as objective medical evidence in the record, including unremarkable EEG and examination findings.

The Court finds that the ALJ's RFC is not supported by substantial evidence because the Court is unable to "trace the ALJ's path of reasoning or discern why the ALJ limited" plaintiff to simple, routine, and repetitive tasks. *Nikole O. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2330, 2023 WL 2364669, at *5 (S.D. Ohio Mar. 6, 2023), *report and recommendation adopted*, 2023 WL 3180493 (S.D. Ohio May 1, 2023). Although the ALJ stated that plaintiff's "headaches" were "considered in the [] residual functional capacity [by] limiting the claimant to simple, routine and repetitive tasks" (Tr. 58), the ALJ failed to articulate his reasons, or cite any medical evidence in support, for making this determination. As explained in connection with the ALJ's Listing 11.02 finding, the Court is unable to discern the basis for the ALJ's conclusion that plaintiff has only "mild" restrictions in concentration, persistence, or pace given plaintiff's severe headache impairment and resultant symptoms. The ALJ correctly noted that plaintiff experienced some improvement after his cervical fusion, but that improvement did not last, and plaintiff's headaches persisted and necessitated yet another surgery. (Tr. 372, 406). The ALJ's conclusion is not tied to any specific evidence or medical opinion, and the ALJ discussion of plaintiff's persistent headache impairment (Tr. 57-58) appears to point to more severe limitations of

13

functioning. The Court is simply unable to understand how the ALJ arrived at his conclusions, thereby preventing the Court from meaningful judicial review. The Court sustains this assignment of error.

### 3. Whether the ALJ erred in evaluating plaintiff's subjective allegations of pain and limitations (second assignment of error)

Plaintiff asserts the ALJ erred in analyzing plaintiff's subjective complaints pursuant to SSR 16-3p. As stated above, the undersigned orders that this matter be remanded because the ALJ's Listing 11.02 and RFC findings are not supported by substantial evidence. Because the ALJ's evaluation of the evidence on remand may impact his analysis of plaintiff's subjective complaints, it is not necessary to address plaintiff's second assignment of error. *See Palmore v. Comm'r of Soc. Sec.*, No. 1:20-cv-36, 2021 WL 1169099, at *9 (S.D. Ohio Mar. 29, 2021); *Born v. Berryhill*, No. 3:14-cv-01946, 2017 WL 2376921, at *9 (M.D. Tenn. June 1, 2017); *Trent v. Astrue*, No. 1:09-cv-2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's argument had merit, the outcome would be the same, i.e., a remand for further proceedings and not an outright reversal for benefits.

Based on the foregoing, plaintiff's Statement of Errors (Doc. 9) is **SUSTAINED** and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order. The ALJ on remand must (1) reevaluate plaintiff's headache impairment at step three of the sequential evaluation process and provide a full discussion of Listing 11.02B and 11.02D equivalency, (2) reassess plaintiff's RFC, and (3) reassess plaintiff's subjective complaints consistent with this opinion.

**IT IS SO ORDERED.**

Date: 6/26/2023

Karen L. Litkovitz
Chief United States Magistrate Judge